IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case No. 3:24-cr-18 |
| WILLIAM R. HALL, | ) ) ) | |
| *Defendant*. | ) ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through undersigned counsel, hereby submits this sentencing memorandum regarding defendant William R. Hall. The United States has no objections to the Pre-Sentence Investigation Report (ECF No. 49, hereafter "PSR") and concurs with the Probation Officer's determination that the defendant has an applicable guidelines range of 37 to 46 months' imprisonment. As explained below, application of the § 3553(a) factors calls for a sentence above the mid-point of the properly computed guidelines range.[1]

**I.     Standards Governing Sentencing**

During sentencing, federal courts must follow a multistep process that analyzes both procedural and substantive concerns. *First*, the Court must correctly calculate the applicable guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). *Second*, the Court "must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted). To the

---

[1] Hall was initially scheduled to be sentenced on October 10, 2024. However, Hall filed a Motion to Appoint New Counsel, ECF No. 43, which the Court granted on September 30, 2024, ECF No. 51. The Court appointed new counsel, and rescheduled sentencing for January 9, 2025.

extent the Court deems some deviation from the guidelines range appropriate, the Court must give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 365 (internal quotation marks omitted). In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a). *See id.* at 364.

II. **Advisory Guidelines Range**

Hall's offense, Conspiracy to Commit Bribery (18 U.S.C. § 371), carries a statutory maximum penalty of 5 years' imprisonment and 3 years' supervised release. The United States has no objections, corrections, or amendments to the PSR and maintains that the appropriate advisory Guidelines range is 37 to 46 months, based on a total offense level of 19 and a criminal history category of III.

Specifically, the Probation Office calculated a base offense level of 12, pursuant to U.S.S.G. § 2C1.1(a)(2), and concluded that the following enhancements applied:

- *Offense involved more than one bribe, U.S.S.G. § 2C1.1(b)(1) (2-Level Enhancement)*: The defendant bribed a corrections officer to smuggle contraband into a prison on multiple occasions.

- *Value of benefit exceeded $6,500, U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(B) (2-Level Enhancement)*: The total amount of bribes paid fell between $6,500 and $15,000.

- *Public Official in a Sensitive Position, U.S.S.G. § 2C1.1(b)(3) (4-Level Enhancement)*: The bribed corrections officer occupied a sensitive position within the meaning of this Guidelines provision. *See United States v. Dodd*, 770 F.3d 306, 313 (4th Cir. 2014) (concluding that "the correctional officers Dodd

2

bribed occupied a sensitive position within the meaning of U.S.S.G. § 2C1.1(b)(3)").

- *Aggravated Role Enhancement, U.S.S.G. § 3B1.1(c) (2-Level Adjustment)*: The defendant was an organizer, leader, manager, or supervisor.

- *Acceptance of Responsibility, U.S.S.G. § 3E1.1 (3-Level Reduction)*: The defendant demonstrated acceptance of responsibility and timely entered a guilty plea.

### III. The Court Should Impose a Sentence Above the Mid-Point of the Guidelines

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. In determining a particular sentence to be imposed, the Court shall consider:

(1) the nature and circumstances of the offense, and the history and characteristics of the defendant; and

(2) the need for the sentence imposed—

　(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

　(B) to afford adequate deterrence to criminal conduct;

　(C) to protect the public from further crimes of the defendant; and

　(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The factors also include "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct." *Id.* § 3553(a)(6).[2] To reach the

---

[2] Section 3553(a) also requires consideration of the kinds of sentences available, the applicable Guidelines range, pertinent policy statements issued by the Sentencing Commission, and the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a)(3)–(5), (7).

3

appropriate sentence, "the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009). As set forth below, the application of the above-referenced statutory factors supports the jointly recommended sentence.

### A. Nature, Circumstances, and Seriousness of the Offense

In 2022, co-defendant Daniel Thomas was Pipe Fitter Supervisor and a Corrections Officer at the Federal Correctional Complex Petersburg. In this capacity, Thomas led a work detail that included inmate William R. Hall.[3] Statement of Facts ("SOF") ¶ 3. In late 2022, Corrections Officer Thomas and inmate Hall entered into a corrupt agreement: Thomas agreed to procure and smuggle contraband (namely, anabolic steroids and tobacco) into the prison for Hall. SOF ¶ 9(a). Defendant Hall, in turn, sold smuggled tobacco to other inmates in the prison, and Thomas agreed not to interfere in defendant Hall's distribution efforts. *Id.* In exchange for Thomas' complicity in the scheme, defendant Hall arranged with an outside-the-prison co-conspirator, Kayla Marie Cronin, to mail Thomas cash payments for bribes. SOF ¶ 9(f). Cronin "act[ed] solely at HALL's direction" in "deliver[ing] funds to CC-2." *Id.*

To effectuate the bribe payments, defendant Hall arranged to send Cronin money (including reinvested proceeds of the illicit sale and distribution of prohibited objects in the prison) through an intermediary. SOF ¶ 9(c). Defendant Hall then designated for Cronin the amounts to send to defendant Hall's mother and to Thomas. SOF ¶ 10(c). Cronin kept a small portion of these funds for herself. SOF ¶ 9(c).

---

[3] Daniel Thomas (listed as CC-2 in the Criminal Information and Statement of Facts) has separately pled guilty to the same offense. *See* Case No. 3:24-cr-36. Co-defendant Kayla Marie Cronin has also separately pled guilty to the same offense. *See* Case No. 3:23-cr-132. The PSR, Statement of Facts, and Criminal Information list defendant Hall as CC-1 and defendant Thomas as CC-2.

Critical to the assessment of the nature, circumstances, and seriousness of the offense is consideration of the corrections officers' roles within the justice system. Bureau of Prison employees, including correctional officers, are called on to ensure that those punished for violations of criminal laws serve their sentence in a safe, lawful manner and later reenter society as productive members of that society. When, as here, a correctional officer joins a criminal enterprise of an inmate serving a sentence for violation of federal criminal laws, the public's confidence in the justice system and those empowered to ensure its fair and lawful administration is unwound. Hall's actions to smuggle contraband into the prison undermined citizens' trust and confidence in a lawful, orderly society.

Hall was integral to and a major driver of the scheme. He at various points "directed" (SOF ¶ 10(c)) co-conspirator Cronin in her participation in the scheme. To his credit, when confronted with his wrongdoing by law enforcement, Hall promptly admitted wrongdoing and pled guilty on a pre-Indictment resolution shortly thereafter. On the balance, when considering the gravity of these offenses and defendant Hall's overall role, a guidelines range recommendation is well-supported by these factors.

### B. History and Characteristics of the Defendant

Defendant Hall has a long and serious criminal history. Notably, Hall committed many crimes for which he received no criminal history points, including: (1) domestic violence against women (PSR ¶ 32); (2) criminal trespassing (PSR ¶ 31); (3) contempt of court (PSR ¶ 34); and (4) failure to appear (PSR ¶ 37). Hall did receive criminal history points for methamphetamine trafficking in 2016; as part of this scheme, the defendant was found to be in possession of various firearms. PSR ¶ 40. While under an active criminal justice sentence in connection with the methamphetamine trafficking offense, the defendant opted to commit the offenses giving rise to this matter. Apart from bribing prison guards and distributing contraband within prison, the

defendant as also committed other infractions while in jail: (1) On July 21, 2023, the defendant was cited for refusing to obey an order and being insolent to a staff member; and (2) On February 20, 2019, the defendant possessed drugs and alcohol. PSR ¶ 40.

On balance, the defendant's PSR reflects several circumstances that are not fully factored into the guidelines range calculation, including: (1) several serious prior convictions garnering no criminal history points; (2) no criminal history points stemming from committing the instant offense while incarcerated; and (3) infractions within prison that create no criminal history points. The government does not argue for an upward departure or variance due to understated criminal history; however, the Court should consider this serious misconduct that is not otherwise reflected in Hall's guidelines as a factor to drive the sentence higher within the guidelines range.

Though Hall's life reflects certain hardships (*e.g.*, facing neglect of his mother from her drug abuse and suffering physical abuse from his mother), none of these hardships bring Hall beyond the heartland of other defendants who come before this Court. The PSR further reflects that the defendant may benefit from mental health and substance abuse treatment, and the Bureau of Prisons is well equipped to provide this care.

### C. Need to Deter Future Criminal Conduct and Promote Respect for the Law

Given the importance of protecting the integrity and fairness of our public institutions, public corruption is one of the most serious offenses in our system of criminal justice and warrants special condemnation. *See United States v. Hayes*, 762 F.3d 1300, 1309 (11th Cir. 2014) ("Bribery cannot properly be seen as a victimless crime, for in a sense it threatens the foundation of democratic government. Putting aside the financial havoc it can cause, bribery tears at the general belief of the citizenry that government officials will carry out their duties

honestly, if not always competently. And that harm, though it may at times appear intangible, is real."); *United States v. Nickson*, 195 Fed. Appx. 291, 294 (6th Cir. 2006) (highlighting the district court's explanation that "public corruption and the assistance in public corruption [are] among the highest and most serious crimes"); *United States v. Spano*, 411 F. Supp. 2d 923, 940 (N.D. Ill), *aff'd* 447 F.3d 517 (7th Cir. 2006) ("Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants. It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all. . ."). The defendant's actions eroded trust between the public and those empowered to fairly administer justice, and punishment is necessary to communicate to the public that such crimes will be met with serious punishment. Punishment will also communicate to inmates and corrections officers alike that corruption within the Bureau of Prisons will result in harsh penalties.

This defendant is also a prime example of someone in need of specific deterrence. As discussed above, Hall has a string of prior criminal activity evidencing disrespect for the law (including failure to appear and contempt of court). And rather than using his time in prison for his own rehabilitation, Hall used it to smuggle and distribute contraband. A serious sentence is necessary to deter future criminal activity and to communicate to Hall that further criminal activity will result in escalating punishment.

   **D.**  **Need to Avoid Unwarranted Sentencing Disparities**

The government is not aware of any disparities generated by this guidelines range sentence.

## IV. Conclusion

For the reasons discussed above, the United States respectfully requests that the Court impose a sentence above the midpoint of the guidelines range.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Robert S. Day
Virginia State Bar No. 90663
Avi Panth
Assistant United States Attorneys
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 874-0932
Fax: (804) 819-7417
Email: obert.day@usdoj.gov