IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) |
| v. | )    Case No. 3:24-cr-18-REP <br> ) |
| WILLIAM R. HALL, | ) <br> ) |
|     *Defendant*. | ) <br> ) |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT HALL'S MOTION FOR DOWNWARD VARIANCE

The United States of America, by and through undersigned counsel, hereby submits this response in opposition to the defendant's motion for a downward variance, ECF 64. The defendant, William R. Hall, argues that a downward variance is warranted primarily because he has demonstrated rehabilitation in recent months, and that he should not receive a sentence higher than defendant Daniel Thomas, a BOP Correctional Officer who the Court sentenced to 24 months in a related case. Both contentions overlook a critical fact: Hall's criminal history is extensive and warrants increased punishment. The PSR assigns Hall with a Criminal History Category of III and Total Offense Level of 19, which results in a Guidelines range of 37 to 46 months. If Hall (like Thomas) had no criminal history points, his Guidelines would have been 24 – 30 months, the *exact same* range applicable to Thomas. In other words, Hall's repeat instances of past criminal conduct are important aspects of his history and characteristics, and those convictions meaningfully distinguish Hall's sentencing analysis from that of Thomas's. For these and additional reasons outlined below, the Court should deny the motion for downward variance.

I. **The Court Should Impose a Sentence Above the Mid-Point of the Guidelines**

A. **Nature, Circumstances, and Seriousness of the Offense**

The government incorporates by reference the details of Hall's offense conduct as set forth in the government's Position on Sentencing. *See* ECF 59, at 4-5. In sum, Hall was integral to and a major driver of the bribery scheme at FCI Petersburg. Hall at various points "directed" (SOF ¶ 10(c)) coconspirator Cronin in her participation in the scheme. And Hall worked jointly with coconspirator Thomas to smuggle contraband into the prison, which Hall then distributed to fellow inmates. SOF ¶ 9(a)-(b). To his credit, when confronted with his wrongdoing by law enforcement, Hall promptly admitted wrongdoing and pled guilty on a pre-Indictment resolution shortly thereafter. On balance, when considering the gravity of these offenses and defendant Hall's overall role, a Guidelines range recommendation is well-supported by these factors.

B. **History and Characteristics of the Defendant**

Defendant Hall has a long and serious criminal history. Most concerningly, Hall was convicted in the United States District Court for the Eastern District of Kentucky of conspiracy to distribute more than 500 grams of methamphetamine in 2017. PSR ¶ 40. This conviction resulted in a sentence of 120 months, followed by five years of supervised release. Hall's methamphetamine trafficking included serious and dangerous conduct. He admitted to conspiring to distribute between 5 and 15 kilograms of methamphetamine. Law enforcement executed a search warrant and found $33,000 in cash on Hall's person, which Hall acknowledged comprised drug proceeds. Law enforcement also found several firearms on the premises, including a Ruger 9mm handgun, loaded with seven rounds; an Anderson, AR-15 rifle; a Smith and Wesson .38 Special pistol; a Mossberg Model 715-T .22 caliber rifle; a Remington Model 700 7mm rifle; a Browning 300 Winchester A-Bolt rifle, a Steyr Model M95 rifle, a SAR Arms .45 caliber pistol; a Charter Arms Model Police Bulldog .38 caliber revolver postiol, and assorted

2

amounts of various calibers of ammunition.  The drug conviction scored three criminal history points in Hall's PSR.  PSR ¶ 40.

Hall committed the bribery offense charged in this case while he was serving his sentence for the 2017 drug conviction.  The bribery scheme spanned from October to December 2022, and ended only because Hall was transferred to another BOP facility.  *See* SOF ¶¶ 2, 7.  Notably, Hall was cited by BOP officials for refusing to obey an order and being insolent to a staff member on July 21, 2023.  PSR ¶ 40.  Hall was released from BOP custody in March 2024, nine months ago.

While Hall should be commended for his recent efforts to rehabilitate his health and his familial relationships, *see* Defendant's Position on Sentencing, ECF 58, at 3 – 9, those efforts do not outweigh the significance of his overall criminal record.  In support of his rehabilitation argument, Hall cites *Pepper v. United States*, 562 U.S. 476 (2011).  *Pepper*, however, simply stands for the legal conclusion that at a resentencing hearing, a court must account for a defendant's history and characteristics up through the day of the resentencing hearing.  In other words, courts may not disregard a defendant's rehabilitation efforts made before a resentencing but after an original sentencing that was vacated.  To the extent *Pepper* is relevant, the government agrees that the Court may consider Hall's rehabilitation efforts up until the date of sentencing in this case.

But unlike the defendant in *Pepper*, who had nearly six years of evidence showing a remarkable turnaround in his life circumstances, *see* 562 U.S. at 481–85, Hall has been released from BOP for nine months.  Less than a year before Hall's release, he was cited for being insolent to BOP officials.  And more importantly, less than two years before Hall's release, he engaged in a bribery scheme to smuggle contraband into FCI Petersburg.  The court should

3

assess the defendant's overall history and characteristics in determining a sentencing in this case. On that basis, a Guidelines sentence is warranted.

### C. Need to Avoid Unwarranted Sentencing Disparities

Hall also argues that imposing a Guidelines sentence would create unwarranted sentencing disparities. He points to the fact that this Court imposed a 24-month sentence on Thomas for Thomas's role in the same bribery scheme. Hall overlooks, however, several important distinctions that justify Hall receiving a higher sentencing in this case.

Thomas received a Guidelines sentence, and so should Hall. As discussed above, Hall's Guidelines range is higher than Thomas's primarily because Hall has a significant criminal history, and Thomas had none. Thomas received an additional two-point enhancement because he was a public official, U.S.S.G. § 2C1.1(a)(1), which Hall did not receive. Unlike Thomas, however, Hall received an aggravating role enhancement under U.S.S.G. § 3B1.1(c). That is because Thomas did not supervise or manage coconspirators. Thomas and Hall jointly operated the bribery scheme as equal partners. And unlike Thomas, Hall repeatedly "directed" coconspirator Cronin to make financial transactions and mailings to further scheme from outside the prison walls. *See* SOF ¶ 10(c). Cronin was unaware of Thomas's identity, and she took instructions solely from Hall. As Probation determined, and Hall concedes, Hall's instructions to Cronin warrant the application of a two-point enhancement under U.S.S.G. § 3B1.1(c).

Hall further claims Thomas should have received a higher sentence in part because Thomas made false statements in his initial interview with investigators. ECF 59, at 10-12. However, Thomas's statements did not substantially interfere with the government's investigation in this case. Moreover, once Thomas obtained counsel, he quickly accepted responsibility and allowed the government to bring an efficient and appropriate resolution to his criminal misconduct. Contrary to Hall's assertion, Thomas's initial denial of guilt simply did not

warrant a substantial increase in Thomas's sentence by application of an obstruction of justice enhancement and denial of acceptance of responsibility. Even so, Hall's assertion that Thomas should have received a higher sentence appears to undercut Hall's request to receive a similar sentence as Thomas.

At bottom, Hall's dissection of Thomas's PSR and the government's sentencing arguments in Thomas's case places the focus on the wrong set of issues. The Court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper*, 562 U.S. at 487. Hall's criminal history meaningfully distinguishes Hall from Thomas, who had no criminal history prior to his conviction in the related case. Hall therefore scored a higher Guidelines range. The government makes the same sentencing recommendation for Hall as it made for Thomas: a sentence above the mid-point of the Guidelines.

## II.    Conclusion

For the reasons discussed above, the United States respectfully requests that the Court impose a sentence above the midpoint of the guidelines range.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:     /s/
Robert S. Day
Virginia State Bar No. 90663
Avi Panth
Assistant United States Attorneys
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 874-0932
Fax: (804) 819-7417
Email: robert.day@usdoj.gov