IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.   3:24-cr-18-REP |
| ) | |
| WILLIAM R. HALL, ) | |
|     Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY TO MOTION FOR DOWNWARD VARIANCE**

In its response to the Defendant's variance motion, the United States attempts to distract the Court from the most glaring issue in this case: that it seeks to treat one defendant significantly harsher than an equally – if not more – culpable co-defendant. Mr. Hall respectfully asks the Court to correct this imbalance, recognize the enormous strides he has made over the last year, and sentence him equally to that of his co-defendant, the corrupt prison guard.

### A. A Guideline Sentence for Mr. Hall Would Be the Only Real Guideline Sentence Issued in this Case

The United States erroneously contends that it simply asks the Court to sentence Mr. Hall to a guideline sentence as it did Officer Thomas. But the guideline range for Officer Thomas was a manipulated range, not accurately reflecting his full conduct. Mr. Hall does not have access to Officer Thomas's Presentence Investigation Report, but the parties' sentencing memoranda failed to mention that the corrupt corrections officer lied – under oath – to federal agents during his June 20, 2023 interview. During that short interview, Officer Thomas repeatedly denied smuggling contraband into the prison, even after a § 1001 warning and even after his own inculpatory text messages were read to him. Exh. 13, ECF No. 58-13. The United States simply disregards this problematic behavior by stating that it did not "substantially interfere" with its investigation and without acknowledging that Mr. Hall's interview with law enforcement was fulsome and truthful.

1

*See* Resp., ECF No. 65, at 4. If lying to federal agents over twenty-six times while under oath should not be penalized, then why should Mr. Hall be penalized for his past, a past for which he has already been punished?

Instead, the government makes much of the fact that Mr. Hall, unlike Officer Thomas, received an aggravated role enhancement. *E.g.,* Resp., at 4. The government says this at the same time it contradictorily contends that "Thomas and Hall jointly operated the bribery scheme as equal partners." *Id.* In making this argument, the government fails to mention that Officer Thomas originated the scheme and recruited Inmate Hall, that Officer Thomas also directed the coconspirator, and that Officer Thomas primarily financially benefited from the scheme, which he ultimately controlled as the supplier of the contraband. In fact, as the Indictment and various Statements of Facts acknowledge, Officer Thomas had "not had rent money for 2 months" and his "shop" had "been empty," from which this Court can infer that this bribery scheme was not Officer Thomas's first rodeo. In a normal drug conspiracy, the supplier is the head of the conspiracy, not the person recruited by the supplier to deal the supplier's drugs. As the Fourth Circuit case law reflects, if Mr. Hall had an aggravating role, then Officer Thomas should have received that enhancement has well. *See* Def. Sent. Mem., ECF No. 58, at 12-14.

If Officer Thomas's full conduct had been encompassed by the guidelines, then his applicable sentencing guideline range would have been 26 instead of 17. Def. Sent. Mem., at 14. With a criminal history category of I and a total offense level of 26, Officer Thomas's guideline range would have been 63-78 months' incarceration. However, this Court sentenced Officer Thomas to 24 months' incarceration – a more than 60 percent downward variance. The government says that Mr. Hall should not be entitled to a sentence of 24 months' because his criminal history is different Officer Thomas's, so his sentencing range is higher than Officer

2

Thomas's. Fine. Mr. Hall therefore simply asks that he receive the same variance as did his "equal partner" Officer Thomas. A 60 percent downward variance for Mr. Hall would be a sentence of 14.8 months' incarceration. The government was fine with providing this massive break to Officer Thomas and provides so reason why Mr. Hall should not also receive similar treatment. Officer Thomas did not receive a true guideline sentence, so nor should Mr. Hall.

### B. Ignoring Mr. Hall's Extensive Rehabilitation Flouts the Purposes of Sentencing

The United States's hyperfocus on Mr. Hall's past ignores the Congressionally mandated purposes of sentencing. Section 3553(a) specifically states that the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes," of sentencing, 18 U.S.C § 3553(a), which include "(1) punishment, (2) deterrence, (3) incapacitation, and (4) rehabilitation" as reflected in the seven § 3553(a) factors. *United States v. Shortt*, 485 F.3d 243, 248–49 (4th Cir. 2007). A sentence that does not serve the purposes of sentencing is unreasonable, as is a sentence greater than necessary. *United States v. Green*, 436 F.3d 449, 456-57 (4th Cir. 2006). The United States's response to the variance motion reflects that its sole basis for its' sentencing recommendation is Mr. Hall's criminal history. *E.g.,* Resp., at 3. This does not comply with Section 3553 and does not achieve "a fair and just result in light of the relevant facts and law." *Green*, 436 F.3d at 457.

Here, even a short period of incarceration achieves the purposes of sentencing and meets all of the Section 3553(a) factors, because here – unlike the vast majority of cases before the Court – the defendant has actively engaged in meaningful, demonstrated, provable rehabilitation. That rehabilitation started years before his release, when he engaged in non-residential drug treatment while incarcerated to address the substance abuse disorder that had been driving his criminal behavior. It continued into August 2023 when he truthfully interviewed with federal agents and

3

received good evaluations from a BOP work supervisor. It continued into October 2023,[1] when he began work while in a halfway house. It continued into March 2024, when he married and began a new family, while working to reconstruct his relationship with other family members. It continued throughout 2024 as he has worked fulltime and served as a caretaker for his mother. It continued through mid-December 2024 when Mr. Hall closed on a home, so that his wife, unborn child, and mother will have a place to live while he served a sentence in this case. Sometimes prison actually works and motivates individuals to get better. No purpose of sentencing is fulfilled by derailing Mr. Hall's rehabilitation efforts and imprisoning him another three years.

WHEREFORE, the Defendant William R. Hall respectfully asks the Court to grant his motion for a downward variance.

Respectfully submitted,

*/s/Heather L. Carlton*
VSB No. 84752
Carlton Law PLC
108 Fifth Street S.E., Suite 305
Charlottesville, Virginia 22902
Tel: 434.260.1573
heather@carltonlawplc.com

*Counsel for Defendant William R. Hall*

### CERTIFICATE OF SERVICE

I hereby certify that I filed the above Reply via the Court's ECF system, which provides service on all parties of record this 20th day of December 2024.

*/s/Heather L. Carlton*

---

[1] The United States asserts that Mr. Hall was not released until March 2024 and thus only has nine months of rehabilitation. Resp., at 3. BOP actually released Mr. Hall into a halfway house on September 27, 2023. Exh. 3, ECF No. 58-3. When Mr. Hall appears before the Court for his sentencing hearing, he will have been out of prison over fifteen months (not nine).

4